UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GJIN KOLBUCAJ,

           Plaintiff,

v.

UNKNOWN PANTS et al.,

           Defendants.

_____/

Case No. 1:22-cv-1073

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initially applied for leave to proceed *in forma pauperis*. (ECF No. 2.) By notice issued November 21, 2022, the Court notified Plaintiff that his application failed to comply with the requirements of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA). (ECF No. 4.) The Court directed Plaintiff to pay the $402.00 filing fees or file the documents required by the PLRA within 28 days. Plaintiff paid the filing fee. Accordingly, the Court will enter an order denying Plaintiff's application to proceed *in forma pauperis* as moot.

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rule 21, the Court will drop Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson from this action and dismiss the claims against them without prejudice.

Under the PLRA the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C.

§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against the Defendant Plaintiff describes as "All of the Oaks Correctional Facility." (ECF No. 1, PageID.1.) The Court will also dismiss for failure to state a claim Plaintiff's claims against Defendant Danket for Fourteenth Amendment violations and for Eighth Amendment violations relating to: (1) Danket's conversation with Plaintiff regarding Plaintiff's lactulose prescription during July of 2021; and (2) Danket's scheduling of a healthcare callout for September 1, 2021. The Court declines supplemental jurisdiction over all state law claims. Plaintiff's Eighth Amendment claim against Defendant Danket relating to Danket's deliberate indifference to Plaintiff's serious medical need after Plaintiff was "poisoned" during September of 2020 is the only claim that remains.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan, beginning in September of 2020, and continuing to September of 2021. The crux of Plaintiff's complaint is that he was denied healthcare during that period.

*Pro se* pleadings are to be liberally construed, but even liberal construction has its bounds. Federal Rule of Civil Procedure 10(a) requires that the Plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). There are many individuals that are mentioned in Plaintiff's complaint, and even accused of improper actions, that are not named in the caption of

the complaint. This Court has concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10 CV 568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *report & recommendation adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" is not a party to the action);[1] *Schorn v. Mack*, No. 94-1747, 1995 WL 37931 (6th Cir. Jan. 31, 1995) (affirming district court's dismissal of complaint which included dismissal of a party named as a defendant in the body of the complaint had not been named as a defendant in the caption and affirming the district court's decision to not allow amendment to correct the omission).

The only defendants named in the caption are ECF Nurses Pants, Schimke, Briske, Danket, Duggard, Drake, and Dalton; Corrections Officers Winter and Baum; Sergeant Johnson; and "All of the Oaks Correctional Facility." (Compl., ECF No. 1, PageID.1.) Those are the only defendants to this action. Other persons named in the complaint are non-parties.

Plaintiff's complaint is not a model of clarity; but he provides useful factual detail in the documents he references in, and attaches to, the complaint.[2] Those documents include:

---

[1] The Court's approved form complaint includes a section that invites the prisoner to identify each party. *See* Prisoner Civil Rights Complaint Form under 42 U.S.C. § 1983, https://www.miwd.uscourts.gov/prisoner-forms (last visited March 16, 2023). Plaintiff did not use the approved form complaint; thus, the only definitive source of the parties' names is the caption.

[2] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint

1. Healthcare kites that Plaintiff sent from September 5, 2020, through October 3, 2020 (ECF No. 1-2, PageID.22–27);

2. Grievance ECF-2020-09-1122-17G regarding Officer McCurry's poisoning of Plaintiff's peanut butter and coffee (ECF No. 1-2, PageID.28–34);

3. Affidavit of Khiry Rouser, another prisoner at ECF, stating that he too tried the purportedly poisoned coffee and suffered symptoms similar to Plaintiff (ECF No. 1-3, PageID.36);

4. Grievance ECF-2021-01-0002-28B regarding the pumping of noxious gas into Plaintiff's cell through the sprinkler head (ECF No. 1-4, PageID.38–43);

5. Healthcare kite regarding treatment for symptoms after noxious gas was pumped into Plaintiff's cell (ECF No. 1-4, PageID.53);

6. Healthcare kites regarding treatment for bloody stool (ECF No. 1-4, PageID.54–64);

7. Grievance ECF-2021-03-410-17A regarding Defendant Winter's response to Plaintiff's request for medical treatment on March 24, 2021. (ECF No. 1-1, PageID.11–19);

8. Grievance ECF No. 2021-07-1031-28B regarding delays in receiving medication. (ECF No. 1-4, PageID.44–49); and

9. Prescription and healthcare kites regarding the medication. (ECF No. 1-4, PageID.50–52).

It is apparent from Plaintiff's complaint that he is dissatisfied with the treatment he has been provided for migraines, burning and aching of the muscles, stomach pain, ulcers, and blood in his stool. In fact, Plaintiff suggests that he has not received any treatment at all. Considering Plaintiff's allegations and his documents, however, it is apparent that he has received treatment. It may be that Plaintiff has not seen a doctor when he wanted to, or that Plaintiff has not always

---

to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3, n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). In considering the documents, however, the Court does not accept as true statements by the grievance responders. The Court accepts as true only Plaintiff's statements set forth in the grievances and the healthcare requests.

received the medicine he wanted when he wanted to receive it, but to say that Plaintiff has not received treatment at all is a gross mischaracterization of the record he has provided.

Plaintiff's troubles began on September 5, 2020. Plaintiff reports that on that date, while he was "on the yard," Officer McCurry (not a defendant), shook down Plaintiff's cell and placed an unauthorized, harmful substance in Plaintiff's coffee, peanut butter, and cereal.[3] Plaintiff began to feel "really sick" immediately upon consumption of the items. (Compl., ECF No. 1, PageID.3.)[4]

Plaintiff complained to Deputy Warden Clouse (not a party) and Unit Chief B. Majerczk. They did not take action to remedy the problem.

Plaintiff indicates that two days after the poisoning he was called to the control center to participate in a telephone call with Defendant Danket. Danket asked Plaintiff what was going on. Plaintiff explained. Danket told Plaintiff to throw the food away and that Danket would talk to the officers to determine "what to do." (*Id.*, PageID.4.)[5]

Initially, on September 5, 2020, the only symptoms Plaintiff complained of were "stomach burn, . . . mouth burn, and . . . brown spots on [his] skin." (ECF No. 1-2, PageID.22.) Five days later, Plaintiff complained again of "stomach burn and diarrhea and [his anus] burn[ed]." (*Id.*, PageID.23.) Ten days later, on September 20, 2020, Plaintiff complained that his "mouth burn[ed], [his] stomach burn[ed], and [his] . . . muscles [burned]" and that his brain had slowed down. (*Id.*, PageID.24.) The next day he complained of "left and right brain pain" and "black spots" on his

---

[3] Plaintiff reports that he is "positive of these accusations because [his] door w[a]s locked and the officers are the only ones with access to his single cell." (Compl., ECF No. 1, PageID.3.) Plaintiff's allegation rises slightly above rank speculation in that it appears to be undisputed that Officer McCurry shook down Plaintiff's cell that day. (Grievance, ECF No. 1-2, PageID.28.)

[4] In this opinion, the Court corrects the spelling in quotations from Plaintiff's filings.

[5] That is the only mention of Nurse Danket in the complaint. As set forth fully below, Nurse Danket is also mentioned in the documents attached to the complaint.

body. (*Id.*, PageID.25.) Then on September 30, 2020, Plaintiff complained of black spots on his skin, "brain slow down and burn [and] muscles burn . . . ." (*Id.*, PageID.26.) Finally, on October 3, 2020, for the first time, in addition to the other symptoms, Plaintiff reports that he is experiencing blood in his stool. (*Id.*, ECF No. 27.)

Plaintiff consistently requested that he see the doctor. It does not appear that he was permitted to see the doctor, but that does not mean he did not receive treatment. In a health care request submitted on March 9, 2021, Plaintiff acknowledges that he had seen a nurse (Defendant Briske) three times during the fall of 2020 and provided stool samples for testing. (ECF No. 1-4, PageID.56, 59.) Plaintiff was tested again in March of 2021. (*Id.*, PageID.59.) Plaintiff was given medication for ulcers (Compl., ECF No. 1, PageID.2), medication for hemorrhoids (ECF No. 1-4, PageID.63), medication for constipation (*id.*, PageID.44–52), and fiber (*id.*, PageID.57). The documents suggest that Plaintiff saw healthcare personnel many more times, but that he wanted to see a doctor, not a nurse.

The flow of healthcare requests stopped in the late fall of 2020, but renewed quickly again in the new year. This time, however, the symptoms were not linked to the purported poisoning during September of 2020; instead, Plaintiff attributed them to a multi-day release of noxious gas into his cell through the sprinkler head. (ECF No. 1-4, PageID.38–43, 53.) Plaintiff blamed Defendant Baum for the gas release, but he does not allege any facts that connect Baum to the problem. He asked Baum about the issue before he filed the grievance. Baum told him that there was no way for the prison to pump gas to Plaintiff's cell—that there was no line to accomplish that. (*Id.*, PageID.38, 41.) Plaintiff alleges nothing more with regard to Defendant Baum.

Plaintiff reports that his ailments "caused all kinds of discrimination from Defendant Johnson." (Compl., ECF No. 1, PageID.4.) Plaintiff reports that, on February 5, 2021,[6] Defendant Johnson "was seen on camera" talking to Defendant Duggard—telling Duggard that Plaintiff is a waste of time and not to spend taxpayer on Plaintiff for healthcare. (*Id.*, PageID.5.) Plaintiff reports that Johnson told Plaintiff that Johnson "would not allow [Plaintiff] to see a doctor . . . ." (*Id.*)

Thereafter, Plaintiff's principal complaint was bloody stool. Plaintiff's healthcare kites continued to ask to see a doctor. Plaintiff reports that, on March 24, 2021, he passed gas and began hemorrhaging. Defendant Winter passed by on rounds. (*Id.*, PageID.4.) Plaintiff asked to see healthcare. Winter refused and refused to let Plaintiff speak to the Sergeant. After Winter's denial of care, Defendant Pants came to Plaintiff's unit to pass out meds. Plaintiff asked to see Pants. Pants advised Plaintiff that Winter had told Pants not to see Plaintiff or allow Plaintiff to see the doctor.

After that incident, Plaintiff was seen by nurses, but he does not identify them. In a health care request dated July 8, 2021, Plaintiff notes that Defendant Briske told Plaintiff that she had put him on call out to see the doctor on July 6. (ECF No. 1-4, PageID.61.) Plaintiff did not see the doctor on that date; but, apparently, that was not Defendant Briske's fault. Plaintiff's documents suggest that there was some confusion as to where Plaintiff would see the doctor and whether he had to wear his prison blues; as a result, he lost the opportunity. (*Id.*, PageID.62.)

Plaintiff requested a refill for his lactulose prescription for constipation on July 8, 2021. He reports that he went without the medication from July 8 to July 24. Plaintiff filed a grievance about it. The grievance form requires the grievant to describe the attempts made to resolve the

---

[6] Plaintiff reports the year as 2020, but that falls entirely outside the timeline described in his complaint. The Court presumes Plaintiff intended to use the year 2021.

issue prior to writing the grievance. Plaintiff states: "I talk with Nurses Brisk[e]. I talk with Nurse Schimke and I talk with Da[nket]." (*Id.*, PageID.44.) Plaintiff does not state when he talked to each nurse. Before Plaintiff filed the grievance, he received the medication. That may have been the result of efforts by Briske, Schimke, Danket, or all of them. Plaintiff does not allege that Briske, Schimke, or Danket denied him the medication.

Although Plaintiff's visit with a doctor did not come to fruition in July 2021, other documents suggest he had better luck in August. In a health care request he wrote: "is good to see medical provider again." (*Id.*, PageID.63.) Plaintiff saw Nurse Danket on August 24, 2021. Danket put Plaintiff on "call out" for September 1, 2021, after Plaintiff complained about his brain—likely migraines—his blood—likely blood pressure—and his bloody bowel movements. (*Id.*, PageID.64.) On September 6, 2021, Plaintiff complained in a healthcare kite that he was not "called out," but he does not suggest that Nurse Danket was at fault.

The year covered by Plaintiff's complaint closes with the health care request discussing the unsuccessful doctor visit arranged by Defendant Danket.

Plaintiff alleges other facts without tying them definitively into the timeline. For example, he reports that "[s]ince September of 2020, [he has] seen Nurse Duggard and Nurse Schimke, both have rec[ei]ved multiple kites from [him] about [his] symptoms and mental health." (Compl., ECF No. 1, PageID.5.)

Plaintiff complains that Defendants violated his Eighth and Fourteenth Amendment rights and that they were intentionally negligent and that he was discriminated against. He seeks damages in the amount of $3,500,000.00 plus punitive damages.

## II.    Misjoinder

Plaintiff brings this action against eleven Defendants, alleging discrete events that occurred over the course of a year—events that resulted in injuries that Plaintiff contends were not properly

treated. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21.

A.      **Improper Joinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's complaint against one of the named defendants took place on September 7, 2020. On that date, by telephone, Plaintiff informed Defendant Nurse Danket about the "poisoning" and Plaintiff's symptoms. Plaintiff contends that Nurse Danket's subsequent failure to do anything to treat Plaintiff's symptoms violated his Eighth Amendment rights.[7] The generally chronological

---

[7] Plaintiff includes Officer McCurry in the same allegation of an Eighth Amendment violation; however, as noted above, McCurry is not properly named as a party to this action.

presentation of Plaintiff's factual allegations supports identifying Defendant Danket as the appropriate starting point for the joinder analysis. By accepting Plaintiff's chronological presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff's only allegations in the complaint against Defendant Danket involve the September 7, 2020, telephone contact. Plaintiff may join all claims he has against Defendant Danket and all claims against others arising out of this same transaction or occurrence.

The Court concludes that Plaintiff has not alleged any other claims against Defendant Danket. He does not allege that Danket did or failed to do anything else in the complaint. The only references to Danket in the attached documents are Plaintiff's communication with Danket regarding the lactulose during July of 2021 in anticipation of a grievance and Plaintiff's note that Danket scheduled a healthcare callout with a doctor for September 1, 2021. The Court will address those allegations as Eighth Amendment claims below; but the alleged conduct is so benign that it seems unlikely that Plaintiff intended that the allegations form the foundation for another claim.

The Court concludes that Plaintiff's claims against the other named Defendants do not arise out of the same transaction or occurrence as Plaintiff's claims against Danket relating to the poisoning. Plaintiff might argue otherwise. He does not expressly state that all of the incidents are connected; but one might infer some connection from: (1) allegations of a broad conspiracy; and (2) the fact that the "wrongs" alleged are all the same sort of "wrongs"—the denial of medical care.

### 1.    The Conspiracy

Plaintiff alleges a vast overarching conspiracy orchestrated by an officer from Plaintiff's previous placement at the Chippewa Correctional Facility (URF). Plaintiff outlines problems that he experienced with Officer King from URF. Through the complaint and the attached grievances,

it is clear that Plaintiff attributes all of the problems he encountered at ECF to Officer King because, on Plaintiff's way out the door at URF, King told Plaintiff that King had friends at Plaintiff's next placement. All of the problems that Plaintiff experienced at URF, Plaintiff opines, followed him to ECF.

Plaintiff, however, cannot manufacture proper joinder out of conclusory allegations of conspiracy and retaliation. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565–66 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a possible one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Plaintiff's allegations of an all-encompassing conspiracy are conclusory and speculative. He offers no facts establishing a link between the alleged conspirators or any agreement between them. Rather, he relies entirely on an attenuated inference that officers and healthcare providers at ECF knew Officer King and agreed to carry out a vendetta King had against Plaintiff. Plaintiff's conclusory claims of conspiracy and retaliation cannot, therefore, provide a link between his various claims spanning an entire year at ECF.

13

### 2. All Defendants Denied Medical Treatment

Plaintiff complains that he was never provided treatment for any of his medical needs and he suggests that those medical needs were the same throughout the entire period. As set forth above, Plaintiff's complaint and the documents attached thereto disclose that Plaintiff was seen by nurses during the relevant period, tested, and medicated. Moreover, Plaintiff did not present just one set of symptoms from the moment he was "poisoned." His medical needs changed over time. The problem Plaintiff experienced with bloody stool, for example, was not mentioned in the record until a month after he was "poisoned" and certainly could not have been a need at issue when Plaintiff spoke with Defendant Danket two days after the "poisoning" incident. Additionally, the purported cause of Plaintiff's medical needs changed over time from the "poisoning" to the noxious gas exposure.

Certainly, the nature of the wrong Plaintiff alleges against each Defendant is the same— i.e., Plaintiff contends that each Defendant was deliberately indifferent to his medical needs. But where there are no facts alleged to indicate concerted action, and where the indifference was manifested in response to different symptoms, at different times, by different people, it simply cannot be said that the claims all arise out of the same transaction or occurrence.

Accordingly, the Court concludes that Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson are misjoined.

### B. Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be

dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint,

describing events that took place from September of 2020 to September of 2021, provides no indication that the statute of limitations has or will run on Plaintiff's claim against Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson for many months. Thus, there is no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is also cautioned that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against the Oaks Correctional Facility

Although Plaintiff lists the Oaks Correctional Facility as a Defendant, he does not explain what the facility has done to incur liability, except to the extent the facility is liable for the actions of the individual defendants. The Oaks Correctional Facility is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL

5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id.* at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, obviously, because the Oaks Correctional Facility is not an entity separate from the MDOC, it is not a "person" under § 1983 either. *See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).

Finally, even if Plaintiff had identified the MDOC or the State of Michigan as the Defendant, rather than the Oaks Correctional Facility, and even if those entities were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff's claims against the Oaks Correctional Facility are properly dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c).

### B.    Violations of MDOC Policy

Plaintiff identifies a number of prison policies that he contends that Defendants have violated. To the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*,

19

501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated prison policy therefore fail to raise a cognizable Fourteenth Amendment due process claim.

**C.      Equal Protection Claim**

Plaintiff describes Defendants' conduct as discriminatory. Based on that description, the Court liberally construes Plaintiff's complaint as attempting to state a claim for violation of his equal protection rights. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right,

20

targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to make this threshold showing. Indeed, he fails to allege any facts to support an equal protection claim. Plaintiff's complaint only mentions the word discrimination with no reference to how Defendants have treated other prisoners. He has, accordingly, failed to state a claim for a violation of his equal protection rights.

### D.      Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced,

deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Construing Plaintiff's allegations liberally, the symptoms that immediately followed Plaintiff's "poisoning" rise to the level of an objectively serious medical need.

Defendant Danket's words in the September 7, 2020, telephone call, standing alone, do not evidence a conscious disregard of a risk to Plaintiff. But Plaintiff further alleges that he received no treatment in the days following the call. That allegation is not contradicted by the documents attached to the complaint. The telephone call, wherein Danket purports to be putting together some plan of action, considered in combination with a complete lack of follow-up care, could be construed as deliberate indifference. Therefore, the Court concludes that Plaintiff has stated a claim

against Defendant Danket relating to the denial of medical care immediately following the "poisoning."

That is the only allegation relating to Defendant Danket in the complaint. The references to Danket in the documents attached to the complaint are likely not intended to state claims under the Eighth Amendment. But, if Plaintiff had intended to include those contacts as part of his deliberate indifference claims, they would fail to state a claim. As stated above, the documents disclose only that Plaintiff and Defendant Danket talked about Plaintiff's lactulose prescription at some point during July of 2021. It is not clear from the documents whether Defendant Danket played any role in the delay in Plaintiff's receipt of his prescribed medication. Similarly, with regard to the contacts during August of 2021, the documents disclose only that Plaintiff complained about symptoms to Defendant Danket and that he scheduled a healthcare call out for Plaintiff. Even if Plaintiff's symptoms constituted a serious medical need, there is nothing in Defendant Danket's response that could be described as a conscious disregard of that need. Therefore, the information contained in the documents does not suffice to state an Eighth Amendment deliberate indifference claim.

### E.    State law claims

The complaint indicates that Defendants have violated Plaintiff's rights under state law as well as federal law. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)(. Dismissal,

however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). A medical malpractice claim under Michigan law is fundamentally different procedurally and substantially from an Eighth Amendment deliberate indifference claim. The Court declines to exercise supplemental jurisdiction over any state law claims in the complaint.

## <u>Conclusion</u>

Because Plaintiff has paid the filing fees and has not otherwise remedied the deficiencies in his initial motion for leave to proceed *in forma pauperis*, that motion will be denied.

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson are misjoined. Accordingly, the Court will drop Defendants Pants, Schimke, Winter, Briske, Duggard, Drake, Dalton, Baum and Johnson from this action and dismiss Plaintiff's claims against them without prejudice.

With regard to the remaining claims and parties, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendant Oaks Correctional Facility will be dismissed under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Danket: claims for violations of Plaintiff's due process or equal protection rights under the Fourteenth Amendment and claims for violation of Plaintiff's Eighth Amendment rights relating to: (1) Danket's conversation with Plaintiff regarding Plaintiff's lactulose prescription during July of 2021; and (2) Danket's scheduling of a healthcare callout for September 1, 2021. The Court also declines to exercise supplemental jurisdiction over any state law claims. Plaintiff's Eighth Amendment claim against Defendant Danket relating to Danket's

deliberate indifference to Plaintiff's serious medical need after Plaintiff was "poisoned" during September of 2020, is the only claim that remains in the case.

The Court will enter an order consistent with this opinion.


Dated:      March 27, 2023                      /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               United States District Judge